Our first case is Roku v. Universal Electronics et al., 2024, 1188 and 1241. Mr. Baker. Good morning, Your Honors, and may it please the Court. The remote central website that allegedly made the RadioShack reference publicly accessible contained an unknown multitude of documents in addition to user manuals, including product reviews, forum postings, and numerous other types of documents and files about remote controls. In fact, the user manuals section was just one small part of this enormous website. To find the RadioShack reference, a user first had to navigate three levels deep into the website by first selecting files, and then miscellaneous, and then manuals. And then even after getting to the manuals sub-sub area of the website, the user was faced with 28 brands of remote controls and 329 remote control manuals within those brands. But examiners have found it, haven't they? And patents have cited it? Well, yes. I mean, we're not disputing that the website was known. But the question is whether a person of skill in the art exercising reasonable diligence could have found this particular manual out of all of the documents and all of the manuals that were on their website. And the reason why it was not able to be found with reasonable diligence was because that the only type of searching that was allowed was by brand and title. And so the only way... Do you think that indexing is not required for a reference to be publicly accessible? That's true. The court has held that it's not required. It's certainly a highly relevant factor, but it's not required. And so each case is evaluated under the specific facts of what was involved, what searching was possible, how many references were there, how was it organized. And in this case, what the evidence shows is that the RadioShack Phone-Up 4 manual could not be found out of all the other documents and files unless the user already knew what he was looking for. What standard of review do we apply to this question of public accessibility? I believe the proper standard of review is de novo. It's a question of law in our view. The facts are not really disputed about the operation of the website. And so in our view, it is a question of law that should be decided de novo by this court. What would someone skilled in the art have been looking for? The RadioShack manual? What would the person have been looking for? Well, I think that's an excellent question. Other cases have looked to terms that were used in the patent to describe the invention. So, for example, in the Lister case, the court said that where the title held words like golf and handicap, and those were terms that the inventor had used, that because you could search using those terms and find the reference, it was publicly accessible. But here, if the person skilled in the art was... You have to be guided to the specific references that correspond to the patent, as opposed to being able to look at universal remote controls? Well, there has to be a reasonable way to find this particular manual or reason that it could be found. Well, there's no question that you could find pretty easily the RadioShack manual, right? There were various publications telling you to go to this particular website, and the website was indexed in a way that you could find the RadioShack manual, right? Well, certainly. We're not disputing if you knew you were looking for the RadioShack phone-up form manual. We're not disputing that you wouldn't be able to find that, right? The question is, if you did not have a priori knowledge of the reference, would a person skilled in the art have been able to find it? And what this court has said in cases like Enrique Cronin, where there were 450 references on index cards with titles, that did not make those references publicly accessible. And same thing in Acceleration Bay, where the court said... Why did someone skilled in the art here, looking at this problem, would be interested in remote manuals generally, right? Why does the person have to be interested in a specific term, in a specific manual? I don't think our cases have required that. Well, I think the same thing applied in Samsung, the Samsung versus Infobridge case, Your Honor, where there was a website that was all about video coding. It was operated by a video coding standards body. And what this court found there was that in order to find the reference, unless you knew what you're already looking for, you first had to navigate to all files, you had to navigate to the city of Torino, and then you were faced with hundreds of references that you'd have to go through. And the court said that was not enough to make it publicly accessible. And that's very similar to the facts here, where you have a huge website... Did you get anything before the PTAB in terms of what a person of ordinary skill in the art would have been looking for? So my understanding is there is some testimony that I believe is unrebutted, that this would have been found and could be found as of the appropriate time period. Did you put any kind of counter testimony in? Well, I think what the testimony that's in the record is that someone could find this reference by navigating in the way we've described, by navigating to Radio Shack and then navigating to this particular title, or someone could search for Radio Shack's phone up form manual. That's what the testimony showed. And in our view, that that's not sufficient to make this publicly accessible. So we didn't dispute... You haven't answered my question, though, about whether or not you put in any contrary testimony. No, we accept that as true. We're not disputing that. The point of the question is whether that is enough to make it publicly accessible. And our point is that, well, sure, if you already know that you're looking for the Radio Shack phone up form manual, you can find it. I mean, we're not disputing that. But the question is, if you don't already have a priori knowledge of that, would the website make it reasonably accessible or not? And I mean, that's in addition to the Samsung case. It's also like Acceleration Bay, where this court had said that if you had to skim through hundreds of references, that that was not enough to make them publicly accessible. So if a person of ordinary skill in the art knows they're looking for universal remote control manuals, are you contending that the person of ordinary skill in the art would not look at the Radio Shack manuals? Well, what I'm saying is that when there's such a large number of manuals that are not organized by feature in any way or functionality, that that is not sufficient to make them publicly accessible, especially when it's on a huge website like this that has all sorts of other types of documents about remote controls, about the user interfaces and communications technology and all other aspects. How do we know what would be considered a large number of manuals? Right. My understanding is on the order of hundreds. We're not talking thousands. We're not talking millions. Well, first of all, we don't know how many files were on the entire website because UEI, Universal Electronics, did not put any evidence in about the total number of documents on the website. But you're right. Apparently within the sub-sub area that dealt just with remote control manuals, there were 329 manuals on that part of the site. And what this court has said... And that part of the site is just focused on manuals of this nature, right? That's my understanding. Yes. Yeah. But what this court has said in other cases, including Acceleration Bay and Cronin, is having to search through hundreds of titles is too many to make it publicly accessible. For what? I mean, what terms would you have to be searching for here? I don't recall that your briefs identify the specific terms that someone skilled in the court would have been searching for and the inability to find those. It's all kind of vague. Well, I don't think we have the obligation. I think it's UEI that had the burden as the party arguing for invalidity and arguing that this reference was publicly accessible to show how a person skilled in the court... You never said what terms. You never said what term, what terminology had to be indexed so you could find it. Right? I think that's right. I think UEI was the one that had the burden to show how you could find it, what terms. What's the if is the problem? Well, to find this reference, to find the reference. Without already knowing that you're looking for this particular Radio Shack 404 manual, it was their burden to show how you could search for it. And in fact, well, in fact, maybe part of the reason we did not provide any search terms or proposers terms was because it was admitted that the website could only be searched by the model and the brand. Right? There was... You could not search using other terms about remote controls. That functionality was not available on the website, Your Honor. But what if it were instead of a website, it's a library and there's a section in the library that has these universal remote control manuals. Are you contending that that would not be publicly accessible to get at those manuals in the library? Well, what I'm saying is I think it would depend on how the call numbers are assigned, how many manuals there are within each call number, whether there's any kind of subject matter indexing, because there's lots of different functionality in these remote controls. And some libraries have subject matter indexes where you could find a reference. You could find one particular or a smaller number of manuals within a large group based on the subject matter, the particular functionality offered by those manuals. So as the case law says, it's a fact, it's a case by case, fact intensive inquiry. So I can see in some cases where that would be true, in some cases where it might not be true. What case says you have to search for, be able to search for particular terminology? I'm not saying that you have to be able to search for a particular terminology, Your Honor. The question is whether you could find whether you could find the reference without knowing about it in advance. And the cases say that when there's hundreds of references, that does not make them publicly accessible. I'm just not understanding the argument. You know, someone in this field looking at this problem would look for manuals on universal remotes. They're guided to that. That's what the website is about. They can search it by brand and model number. I'm not understanding what search terms you think needed to be searchable to satisfy public access. Well, I'm not saying it's required, but if it did provide either full text searching of the manuals or provided subject matter indexing or searching of the manuals, and you could search on terms that are relevant to the technology of this invention, I think that would make a huge difference in terms of making it publicly accessible. But here, there was no ability to do any kind of searching. And it sounds like your rule, though, requires some type of searching aid for there to be public accessibility. Is that what you're contending? Not necessarily. I mean, if there's a very small number of documents, then I don't think there would need to be some search aid. But I think consistent with the Federal Circuit's cases, when you have a large number. And when you contend it's a small number, I feel like the other part of the difficulty with your rules is unclear what you mean by small versus large number. Yeah. Well, I mean, the Federal Circuit hasn't articulated a bright line cutoff. What we have are cases to look at where there were hundreds of documents to look through. And similarly here, again, we don't think it's appropriate just to focus solely on the user manual section, because there was an untold number of other documents on the website. But even if you did look at that area, there were hundreds of documents, just like there were hundreds of documents in Henry Cronin and in Acceleration Bay. Let me ask you one housekeeping question, because your time is running out. Yes. Is the only dispute on ground one whether or not the Radio Shack reference was publicly accessible? Well, I think it's it might be ground two, Your Honor. Is there a dispute on this applicable ground whether or not the Radio Shack reference was publicly accessible? That's one of the main issues. There are also other arguments with respect to particular dependent claims, including like dependent claim number two, where the issue is whether the iteration has to continue until one of the two conditions is met. And for the reasons in our brief, we don't think that. Your rebuttal time is half gone. OK. Let me conclude there then, Your Honor, and save the rest of my rebuttal time. We'll give you three minutes for rebuttal. OK. Thank you very much, Your Honor. I appreciate that. Mr. Davison. May it please the court, I'd like to begin with this question of public accessibility we've been going over. First, there are four factual findings that the PTAB made that we should be reviewing for substantial evidence. Once we look at those four factual findings, the ultimate conclusion is the Radio Shack remote control manual was publicly accessible on RemoteCentral.com. Now, we touched on some of these earlier with the questioning of Roku's attorney. But number one, the PTAB found, and they wrote in the final written decision, we note that no cross-examination testimony of Mr. Tonks was entered into the record and that Mr. Tonks' testimony otherwise stands unrebutted. Mr. Tonks is the man who personally went to the Radio Shack website, downloaded this prior art that we're talking about, and uploaded it to his website, RemoteCentral.com. Unrebutted. Roku did not take his deposition. So everything that he said, true. Next. Do you contend that he represents a person of ordinary skill in the art? I think he would. So the PTAB, what it determined a person of ordinary skill in the art would be in this case was a bachelor's degree in electrical engineering, computer science, or something equivalent, two years of experience in communications or consumer electronics devices. I think that's important. Our PCETA here knows about consumer electronics. Second factual finding the PTAB made that we're reviewing for substantial evidence. They concluded that PCETAs could find RemoteCentral.com. By PCETA, I think you're talking about a person of ordinary skill in the art. Yes, Your Honor. And I will endeavor... That's to speak English in a court. Absolutely, Your Honor. I will endeavor to do so. So the board determined that person of ordinary skill in the art could have found RemoteCentral.com. That is no longer disputed. Roku abandoned that argument at the oral argument in the PTAB. There's no question that you could find universal remote control manuals and that you could search this website by brand and model number. The question is, is that enough? Do you have to be able to do a more granular search than that? And I think the answer is no, you don't have to be able to do more than that. Where this all kind of boils down to is people could find their way to the universal remote subpage. That was the argument we kind of heard from Roku's attorney. You couldn't find your way there. There's evidence in the record that a patent examiner did exactly that. I don't think they're disputing that you could find the website or that you could search the website by model number and brand. There's no question about that. But one of the... So what they're saying, that's not enough, but it's not clear what else they want. I agree. It is not clear what else they want. When we look at the overall test, though, for public accessibility, it's whether our person of skill in the art who's interested in the subject matter could have reasonably located the reference. The subject matter here is universal remote controls. I do think that the universal remote's page on remotecentral.com is equivalent to an aisle in a library filled with manuals all about universal remote controls. Every single one of them is relevant prior art to the 875 patent. The title of the patent is a method of setting up a universal remote control. Those universal remote controls have keyboards, they have processors, they have memory, codes. Those are all things that are relevant to someone who is trying to evaluate whether or not, you know, the 875 patent is valid. Going back, though, there's still more factual findings that the board found that compelled the conclusion on public accessibility. The board tells us petitioner, UEI here, presents specific uncontroverted evidence that a person of skill in the art could have easily navigated to the index for the universal remote controls manuals on remotecentral.com and that the number of manuals on the site at the relevant time was relatively modest. We're talking about 300 manuals here. That's not a large number, particularly when every single one of them is relevant prior art. And I think that's the important distinction from all the cases we heard from Roku's attorney. The cases that have found that something is not publicly accessible is when you have to look through hundreds of references that are irrelevant. All of the manuals on this page are relevant prior art. That's the critical distinction on how we can distinguish all of those other cases. The fact... The council also said, though, you wouldn't just look at the portion on the page related to the manuals. What is your response to whether or not you'd look beyond that portion related to the manuals? So the response to that is, number one, a U.S. patent examiner, and we cited it to it in our briefs, found that page, the universal remote page on remotecentral.com. They found their way there, cited it as prior art. That's number one. Number two, Mr. Talks tells us in his declaration that companies would use his page to look at the manuals of their competitors. Right? In paragraph nine of his supplemental declaration, he tells us... What page are you looking at in the appendix? In the appendix, it's 2656, if you're interested. That would be volume one, APPX 2656. You can keep going, I'm interested, I want to look it up. He mentions that companies such as Philips, Sony, Logitech, goes on and many others. These companies were interested not only in understanding how customers viewed their remote controls, but also in using my website to view the features and information about their competitors' remote controls. People liked remotecentral.com because they could go there and look at their competitors. So a company like Sony could say, what is RadioShack doing? Again, not disputed. Last but not least, the fourth, I think, factual finding that we're looking at for substantial evidence, the board told us that having found remotecentral.com, a skilled artisan could have used the site's search capabilities to locate specific prior art. Those four things are all supported by substantial evidence. They compel the conclusion that RadioShack was publicly accessible. And that dispute resolves the entirety of claims 1, 3, 5, 9, and 14. So if you agree with the board that RadioShack is publicly accessible, those claims aren't valid. Do we have to agree that the searching capabilities of remotecentral.com were sufficient to affirm? No, I don't think you have to get all the way to that conclusion. I think that you can affirm based primarily on the fact that the universal remotes page on the subject matter, it is completely related to the subject matter. And that the person of skill in the art would have been, who is interested in universal remotes, would go there. I mean, this is the best location on the internet for subject matter for the 875 patent. And you did tell me that you believe, is it Mr. Tonks or? Mr. Tonks, yes. Mr. Tonks would be a person of ordinary skill in the art. My follow-up question is, is there a dispute that he would be a person of ordinary skill in the art? Yeah, I don't believe there is. But I will let Mr. Baker speak to that. Moving along, Mr. Baker touched on the issue of claim construction for claim 2s. I would just briefly like to hit that. Overall, one of the issues we're going to try to resolve probably in this appeal and maybe in the next one is, what does it mean to iterate, right? That seems to be the dispute between the parties. And fundamentally, the dispute boils down to this. The parties agree that the claims of the 875 patent encompass if you were pressing and holding a button on the remote control to do a brand search. Parties agree if you press a button and then you let it go for a bit and press it again, that's within the scope of the claims. What Roku is arguing is that what is not within the scope of the claims is if you push a button, multiple times. And I would submit to this court that there's nothing in the claim language that would support that distinction. And that's the conclusion that the board ultimately reached. Do you want to address the cross-appeal and tell us why the issue isn't waived? Sure, I can start with why the issue isn't waived. What we pointed to in our petition for limitation 11E was we pointed to the fixer, right? This other reference called looters, it's got this thing called a fixer. And we said the fixer is what does limitation 11E. Dr. Ho pointed to that same thing in response to our petition. In the patent owner response, they raised an argument. They said the fixer doesn't do it because in the fixer, you're installing code sets one at a time. And after you've combined them, you don't then install them. In response to that, the board said the record would benefit from further development. And that's what we did. In our reply brief, we pointed to the same embodiment of the same prior art reference. And we explained why that that same embodiment meets what they allege the claims encompass. And that's allowed. I think the Wildcat licensing case that we pointed to in our briefs explains exactly that. Does appendix page 556 show exactly how you raised it in your reply brief? Yes, I believe so. That's what I have in my notes. And that's the only page, correct? I have it as 554 to 556. But that is where we raised it. So we have a situation where there's this reinstallation argument, if we can call it that. And the board, as I read the board decision, didn't address that at all. It didn't find forfeiture. It didn't address it on the merits. It's just silent as to it, right? Correct. And I think I would take it one step further, where it seems to me the board missed the reinstallation argument. And that's because what the board writes in the final written decision is Wooters does two things. And it says those two things would be superfluous. You wouldn't reinstall the code set. But Wooters tells you exactly why you would. In the invention of Wooters, after you create your new code set and fix it, the why is if your batteries fail or your remote malfunctions, I'm going to reinstall it. It uses the words reinstall. The board is silent on that. And so to me, it just seems that the board missed it. And that's why we would ask that you would remand on that one single point for further deliberations. Would the remand include the question of whether the issue was waived by waiting until the reply to raise it? My position would be no, because I don't believe Roku raised that argument in the lower. They didn't raise the forfeiture. They did not raise the forfeiture argument. That's what we explain in our briefs. Unless there's further questions for me, I would... I have one follow-up question. Absolutely. So just following up on where you're saying this was raised, if you have access to the appendix, I just want to make sure I have all of the lines and pages on that. Do you have access to it? I do. I've got the relevant excerpt. And I will point you right to what I think is the best support I have. It is on page 556. We write, moreover, Wooters clearly discloses that the chosen code set is the activated code set, and if the remote control ever malfunctions, the code set can be installed again. And then you didn't raise this comparable argument in the petition, right? In the petition, we weren't pointing to that second set of sentences in Wooters. I would agree with that. What we were pointing to is the fixer as a whole. What we did not point to is in Wooters, there is a sentence that starts, when the remote batteries have been exhausted. That was not an issue in the petition. But it's the same embodiment of the same reference. And under the Wildcat licensing case, we are allowed to point to the same embodiment of the same reference to explain why that still invalidates in response to Roku's arguments. That's why I think it was properly raised. You wanted to save two minutes for a response on your cross-appeal, and you'll get the benefit of that only if it's addressed by appellant. Thank you so much. Mr. Baker. Thank you, Your Honors. I'd like to discuss further Claim 2. Before you get into that, since we're on the topic of Claim 11, this reinstallation argument was discussed at the oral argument before the board, including pages that aren't included in the appendix. And as I read the oral argument, you addressed the reinstallation argument on the merits. You never argued that there was forfeiture. Am I correct about that? No, no. My understanding is that what we addressed was their fixer argument related to storing the combined code set. I don't believe we addressed the reinstallation. If you look at 59 and 60 of the oral argument transcript, you specifically addressed it. But is it correct that you never argued there was forfeiture? I don't recall that we specifically said forfeiture. I think the question is whether UEI has met the burden to show this issue was adequately raised. But you can raise, you can waive a forfeiture argument, right, by not raising it? I believe that's possible. But in this case, where no one recognized they were even making this argument, in our view, there was no forfeiture. It was their burden to show that this issue was properly raised before the board. But I would like to have just a few minutes on Claim 2, if that's okay. Because the important thing about Claim 2 is that even if the term iterating and the phrase containing iterating in Claim 1 is broad enough to cover a user repeatedly pressing the button to advance through the code sets, Claim 2 is narrower than that. Claim 2 adds further restrictions on how the iteration will operate and requires the iteration to continue until one of two conditions occurs. And that's not what happens in the RadioShack reference. When the user pushes a button, the remote sends a single test code and then stops. And it waits. And it waits. And the iteration does not continue until user approval or all code sets have been tested. And the reason why we know that that is not iterating, that the iterations are not continuing while the remote is waiting for user input, is because the specification of the patent tells us that. It tells us that in connection with Step 8 of Figure 5, when the remote is waiting for user input, the patent says that, quote, the iteration stops. And it considers the iterations to be stopped while it's waiting for user input, even though, depending on what the user does next, the iteration might potentially resume. Let me ask you one question on Claim 11 before we move on. Do you contend that it's a different argument between the fixer argument and the reinstallation argument? Or do you think these arguments are two sides of the same coin? No, no. I think it's completely two different arguments. There are two different parts of a paragraph in the reference. They focused and highlighted and bolded in their briefing. The first part, which relates to what the fixer does, which is storing the combined code set into the database. That's the fixer argument. The reinstallation argument is that later, if there's a malfunction, that stored code set can be reloaded. But that's not done by the fixer. The patent never describes that as being done by the fixer. So in our view, the fixer argument has to do with storing the codes into the database. And the reinstallation is pulling them back out of the database. And that's what UAI never argued until a half sentence of their reply brief. And that was the first time that argument appeared. Thank you, Mr. Baker. Thank you. Mr. Davison has a couple of minutes on the cross-appeal. May it please the court, and I'll be brief. Sticking again with the cross-appeal only and focusing on the fixer. One thing I just want to make sure that is clear for the record. The entire paragraph that we're disputing and talking about was squarely listed in our expert, Dr. Henry Ho's opening declaration. So while the petition focused on the top part of the paragraph, from the very beginning, we were also pointing to the second part of the paragraph. That's in Appendix Volume 1, 1023, Paragraph 167. You'll see in the opening petition, our experts quoting the whole thing. But the expert declaration alone cannot preserve the issue in that case. I agree with that. But again, under the Wildcat licensing cases and the other ones we've cited in our brief, in response to Roku's arguments, we are allowed to explain why the same embodiment, the same paragraph, albeit a couple sentences below, still meets the limitations of the claim. And that's what we did. Combine that with the fact that Roku forfeited this waiver argument by not raising it at the oral argument or at any point until we got here, I think it's appropriate to take a look at the section and see if you agree with us. Did the board miss it when they wrote that it would be superfluous to do the reinstallation? I think the only answer is yes. The fixer tells you why you do it. It's because when the remote malfunctions, the batteries run out, you reinstall the code set. Once you've done that, you've met limitation 11E, which requires combining and then installing. With that, I have nothing else unless there's another question I could answer. Thank you, counsel. The case is submitted.